# BOARD OF COUNTY SUPERVISORS OF PRINCE WILLIAM COUNTY, VIRGINIA, Plaintiff,

v.

## The UNITED STATES, Defendant.

### No. 90–364L.

United States Court of Federal Claims.

Jan. 24, 1996.

---

Sharon E. Pandak, Prince William, Virginia, for plaintiff.

Alan Brenner, Washington, D.C., for defendant. Donald F. Rosendorf and David O. Vollenweider, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on remand from the United States Court of Appeals for the Federal Circuit, "to determine just compensation due the [plaintiff] for the taking of its land which it held in unencumbered fee simple." *Board of County Supervisors v. United States,* 48 F.3d 520, 528 (Fed.Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995).

## FACTS

In 1986, Hazel–Peterson Companies ("the Developer") purchased nearly 550 acres of agricultural land in Prince William County, Virginia. Because the land was zoned as "Agricultural," development could not take place until the land was rezoned as a "Planned Mixed Use District." The Developer applied to the Board of County Supervisors for the necessary zoning permits, which were granted in due time.

As part of the approval process, the Developer provided a document to the County entitled "Proffer," which detailed several improvements that the Developer would make upon the land if permitted to develop, including: stormwater drains, community trail systems, community swimming pool, tennis courts, land for a fire station, a commuter parking lot, etc. In addition to these improvements outlined in the Proffer document, the Developer conveyed to the County in fee simple, an aggregate of 16.05 acres of land for public streets.

This large development, known as the William Center, adjoined the Manassas Battlefield Park near Manassas, Virginia. Given the historical nature of this land and the adjoining Battlefield Park, a grass-roots campaign commenced to thwart Hazel–Peterson's efforts at developing the William Center. The citizen activists were successful at halting the development when Congress enacted the Manassas National Battlefield Park Amendments of 1988 ("the Act"). 16 U.S.C. § 429b(b) (1994). In the Act, Congress effected a legislative taking of the property by eminent domain. The Act vested in the United States all right, title, interest, and

immediate possession of the William Center tract, but also provided for the payment of just compensation to the property owners, as mandated by the Fifth Amendment. The government paid the Developer a considerable sum of money for the land and improvements thereon that had occurred prior to the taking.

The County filed suit, seeking just compensation for its interests in the proffers, and for the 16.05 acres of land, including $100,000 of improvements the County made upon the land. This court held that the proffers were not "property" for which the Fifth Amendment required compensation. *Board of County Supervisors v. United States,* 23 Cl. Ct. 205, 210 (1991). The Federal Circuit affirmed. *Board of County Supervisors,* 48 F.3d 520, 526 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995).

This court also held that the County was not entitled to just compensation for the 16.05 acres of land designated for street purposes because no compensable taking occurred. *Board of County Supervisors v. United States,* 27 Fed.Cl. 339, 348 (1992). The Federal Circuit reversed and remanded "to determine just compensation due the County for the taking of its land which it held in unencumbered fee simple." *Board of County Supervisors,* 48 F.3d at 528.

## DISCUSSION

### A. 16.05 Acres of Land

█ The Federal Circuit stated the following with respect to the County's interest in the 16.05 acres:

[T]he developer here, absent an express condition in the instrument of transfer sufficient to create an enforceable right against the County, retained no power to reclaim the land should the County fail of its purpose. And absent such conditions on the County's estate in the land, the County took in fee simple ... and was free as a matter of property law to do with the property what it wished.

. . . .

In light of our conclusion regarding the nature of the interests owned by the Coun-ty, the argument of the United States regarding the difficulties inherent in determining the value of property interests for which there is no market is beside the point ... The interests held by the County in these five parcels, constituting the 16.05 acres, are no different from the fee simple estates held by other owners of property within the William Center tract.

*Board of County Supervisors,* 48 F.3d at 527–28 (footnote omitted).

Although the Federal Circuit made it clear that the County held a compensable fee simple in the 16.05 acres, indeed the same interest as the Developer, it said nothing as to valuing that parcel. On remand, both parties filed briefs on the issue of quantum for just compensation, and oral argument was held. In their briefs, both parties primarily relied on two expert appraisers who testified at trial to advance their respective theories for quantum. The government also made several additional arguments for nominal damages that have been essentially rejected by the Federal Circuit in remanding this case.

One of plaintiff's expert appraisers, Ben Kelsey, testified that streets should be appraised at the same value as the surrounding land. Therefore, according to Mr. Kelsey, if the adjoining property were accurately appraised at three dollars per square foot, which value was supplied to Mr. Kelsey by Mr. Hanie Trotter, an attorney with the County service authority, then the streets should likewise be valued at three dollars. However, Mr. Kelsey did not appraise the property in question. He testified:

I was the one who said I did not want to do an appraisal of the whole property. To me it was a massive job. I would have done a very large analysis of it, and then *I would not have felt particularly qualified to do it, because I see it as an unusual property* . . . .

Transcript at 197 (emphasis added).

Because Mr. Kelsey did not conduct an appraisal of the subject land, or the surrounding land, and because he testified that he did not feel qualified to appraise the land, the court accords little credence to Mr. Kel-

sey's testimony in determining just compensation.

Both plaintiff and defendant called appraisal expert Anthony Reynolds during their respective cases in chief. The substance of Mr. Reynolds' testimony was that the average value of the William Center was three dollars per square foot of land. Of that three dollars, twenty-five percent of the value came from the below-ground rights to excavate and install sewers and cables. Fifty percent of the three dollar value was derived from the right to build on the land, and the remaining twenty-five percent represented the surface usage. Mr. Reynolds testified that the County only had rights to use the surface land for street purposes, or twenty-five percent of the three dollar average value. Thus, according to Mr. Reynolds, the 16.05 acres should be valued at seventy-five cents per square foot. Mr. Reynolds testified in this regard during both plaintiff's and defendant's cases in chief.

However, the Federal Circuit flatly rejected the theory that the County had anything less than a true fee simple in the land, or that the County was somehow restricted in its use of the land. Therefore, in terms of Mr. Reynolds' testimony, the County had rights in one-hundred percent of the land.

> [T]he County took in fee simple … and was free as a matter of property law to do with the property what it wished.
>
> . . . .
>
> … The interests held by the County in these five parcels, constituting the 16.05 acres, are no different from the fee simple estates held by other owners of property within the William Center tract.

*Board of County Supervisors,* 48 F.3d at 527–28 (footnote omitted).

Therefore, the court rejects Mr. Reynolds' characterization of the County's interest as anything less than one-hundred percent of the rights in the land and finds that the whole of the evidence substantiates plaintiff's claim for three dollars per square foot. Because the Federal Circuit explicitly held that

no distinction was to be drawn between the Developer's interest in the William Center tract and the County's interest in the 16.05 acres, the County is entitled to three dollars per square foot of its 16.05 acre tract, with interest to be paid according to the statute, 16 U.S.C. § 429(b)(2)(B).

## B. Improvements to the Property

■ Plaintiff provided expert testimony that the County spent $100,000 on improvements to the 16.05 acres designated for streets. Defendant claims that plaintiff affirmatively waived its compensation to these street improvements during trial. The court disagrees with defendant's characterization of plaintiff's comments as an affirmative waiver of compensation. Plaintiff clearly established at trial that it spent $100,000 on improvements. Moreover, the Federal Circuit acknowledged that the government paid the Developer a "substantial sum" for the costs it incurred on construction that had occurred prior to the taking. *Board of County Supervisors,* 48 F.3d at 523. Therefore, the court holds that the County is entitled to $100,000 for improvements it made upon the land prior to the taking, with interest according to the statute.

## CONCLUSION

Plaintiff is entitled to just compensation of three dollars per square foot for the 16.05 acres which the Federal Government took by eminent domain pursuant to the Manassas National Battlefield Park Amendments of 1988. Plaintiff is also entitled to $100,000 for improvements it made to the land prior to the taking. Interest shall be paid according to 16 U.S.C. § 429(b)(2)(B). Each party shall bear its own costs.

IT IS SO ORDERED.