**BOARD OF COUNTY SUPERVISORS OF PRINCE WILLIAM COUNTY, VIRGINIA, Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

**No. 96–5082.**

United States Court of Appeals, Federal Circuit.

June 18, 1997.

Sharon E. Pandak, County Attorney, County of Prince William, Prince William, VA, argued for defendant-appellant. With her on the brief was Gifford R. Hampshire, Assistant County Attorney.

Jacques B. Gelin, Attorney, Environment & Natural Resources Division, Department of Justice, Washington, DC, argued·for defendant-appellant. With him on the brief were Lois J. Schiffer, Assistant Attorney General, John A. Bryson, Alan Brenner, Donald F. Rosendorf, and David O. Vollenweider, III, Attorneys.

Before PLAGER, RADER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

The United States appeals from the January 24, 1996 final judgment of the United States Court of Federal Claims in *Board of County Supervisors v. United States,* 34 Fed. Cl. 678 (1996). The case was before the Court of Federal Claims on remand from this court. In our remand decision, we instructed the court to determine just compensation due the Board of County Supervisors of Prince William County, Virginia ("County") for the taking of 16.05 acres of land by eminent domain pursuant to the Manassas National Battlefield Park Amendments of 1988, Title X of the Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, § 10002(2), 102 Stat. 3810 (codified at 16 U.S.C. § 429b(b) (1994)). *Board of County Supervisors v. United States,* 48 F.3d 520, 528 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995). The Court of Federal Claims awarded the County, exclusive of interest to be paid pursuant to 16 U.S.C. § 429b(b)(2)(B), three dollars per square foot for the 16.05 acres taken, as well as $100,000 for improvements made to the land prior to the taking. *Board of County Supervisors,* 34 Fed. Cl. at 681. Because the court erred as a matter of law (i) in valuing the narrow strips of land at the rate of the surrounding property,· and (ii) in awarding the County a dollar amount for improvements made to the property, we vacate the judgment and remand the case for a determination of the fair market value of the 16.05 acres.

## BACKGROUND

In 1986, a land developer purchased a 550–acre tract of agricultural land in Prince William County, Virginia. *Board of County Supervisors,* 48 F.3d at 522. The developer, to obtain rezoning of the tract that would accommodate his desired development plans, was required to convey to the County five narrow strips of land, totaling 16.05 acres, for

use as public roads. *Id.* When the developer proposed to construct a much larger development on the tract than originally anticipated, a citizens' coalition persuaded Congress to enact the Manassas National Battlefield Park Amendments of 1988 (the "Act"). 16 U.S.C. § 429b(b). The Act vested in the United States all rights to the developer's tract and to the 16.05 acres owned by the County. *Id.* The Act concomitantly obligated the United States to pay just compensation for the land. *Id.*

In due course, the developer and the County filed separate suits in the Court of Federal Claims seeking compensation allegedly due under the Act. *Board of County Supervisors,* 48 F.3d at 523. The government settled the developer's suit, but declined to pay the County the $2 million it sought for the 16.05 acres. *Id.* After a trial, the Court of Federal Claims issued an opinion holding that the strips of land were burdened with a road-use condition and that the strips' dedication to a non-profitable use rendered them essentially valueless. *Board of County Supervisors v. United States,* 27 Fed. Cl. 339 (1992). The County appealed the decision to this court.

We reversed the Court of Federal Claims decision, holding that absent an express requirement that the land be used for roads, the "County took in fee simple ... and was free as a matter of property law to do with the land what it wished." *Board of County Supervisors,* 48 F.3d at 527. We remanded to the trial court "for further proceedings to determine the just compensation due the County for the taking of its land which it held in unencumbered fee simple." *Id.* at 528.

On remand, following briefing and oral argument, the court decided the compensation issue based upon the record developed in the prior proceedings. The court awarded the County compensation at a rate of three dollars per square foot. *Board of County Supervisors,* 34 Fed. Cl. at 681. Three dollars per square foot was the rate Mr. Hanie Trotter, an attorney with the County Service Authority, used at trial in estimating the value of the entire 550–acre tract. *Id.* at 680. The court also awarded the County an additional $100,000 for road improvements made to the land prior to the taking, bringing the total award to $2.2 million. *Id.* at 681. The government appeals the court's decision, challenging the methodology that the court used in valuing the narrow strips at the same rate as the surrounding property and objecting to the $100,000 award for road improvements.

## DISCUSSION

### I.

■ We have exclusive jurisdiction over appeals from final judgments of the Court of Federal Claims. 28 U.S.C. § 1295(a)(3) (1994). We review such judgments to determine whether they are incorrect as a matter of law or premised on clearly erroneous factual determinations. *Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1578 (Fed.Cir. 1993).

The government asserts that the court committed reversible legal error in valuing the 16.05 acres at the same rate as the adjoining land absent any evidence that the market values were comparable. The government contends that the market value of the 16.05 acres is less than the market value of the surrounding property because of existing state and county laws restricting the use of the land and because of the limited development potential of the narrow strips.

In particular, the government argues that the 16.05 acres are burdened by state law and county zoning restrictions. The government contends that under the Virginia Dedication Statute, Virginia Code § 15.1–478, land conveyed to a municipality for use as streets, even if conveyed in fee simple, is burdened for use as roads. Addressing the physical layout of the land, the government notes that the County's own zoning ordinance contains provisions which severely restrict the use to which the 16.05 acres could be put. Specifically, these restrictions set minimum distances of proposed buildings from front, side, and rear lot lines and minimum distances between buildings and public rights of way or access easements. The government asserts that even at one of the widest points in the road path, at best 50 feet of width is left for development, and that with additional

zoning provisions relating to vehicular access, virtually no land is available for development. The government notes that at trial, witnesses testified that neither a house nor a business could be built on the strips comprising the 16.05 acres and that the strips could not be developed unless combined with the adjacent land.

## II.

■ The burden of establishing the value of the land is on the County, as the condemnee. *United States ex rel. Tennessee Valley Authority v. Powelson*, 319 U.S. 266, 273, 63 S.Ct. 1047, 1051–52, 87 L.Ed. 1390 (1943). As compensation for the condemnation, the County is entitled to the value that the 16.05 acres would command ·in the open market in light of the highest and most profitable use to which the acreage might reasonably be devoted in the near future. *See Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 708–09, 78 L.Ed. 1236 (1934) ("Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined.... The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered ... to the full extent that the prospect of demand for such use affects the market value while the property is privately held."); *McCandless· v. United States*, 298 U.S. 342, 345–46, 56 S.Ct. 764, 765, 80 L.Ed. 1205 (1936) ("The rule is well settled that, in condemnation cases, the most profitable use to which the land can probably be put in the reasonably near future may be shown and considered as bearing upon the market value....").

■ In valuing the 16.05 acres at the rate of the surrounding property, the Court of Federal Claims focused on the following statements in our decision:

[T]he developer here, absent an express condition in the instrument of transfer sufficient to create an enforceable right against the County, retained no power to reclaim the land should the County fail of its purpose. And absent such conditions on the County's estate in the land, the County took in fee simple ... and was free

as a matter of property law to do with· the property what it wished....

In light of our conclusion regarding the nature of the interests owned by the County, the argument of the United States regarding the difficulties inherent in determining the value of the property interests for which there is no market is beside the point.... The interests held by the County in these five parcels, constituting the 16.05 acres, are no different from the fee simple estates held by other owners of property within the William Center tract. *Board of County Supervisors*, 48 F.3d at 527–28 (citations omitted). Extrapolating from these statements, the court concluded that: "[b]ecause the Federal Circuit explicitly held that no distinction was to be drawn between the Developer's interest in the William Center tract and the County's interest in the 16.05 acres, the County is entitled to three dollars per square foot of its 16.05 acre tract." *Board of County Supervisors*, 34 Fed. Cl. at 681.

The statements which the Court of Federal Claims quoted from our decision spoke to the issue of the extent to which the County was free to use the 16.05 acres for whatever purpose it chose. It was necessary for us to address this. issue on account of the government's argument in the first appeal that the purpose of the transfers which comprised the 16.05 acres was to enable the County to make the road improvements necessitated by the development. Accordingly, the government argued, "there was established a legally enforceable burden on the properties transferred." *Board of County Supervisors*, 48 F.3d at 526. In the government's view, because the 16.05 acres could only be used for road purposes, in view of the termination of the development, the· acreage had no practical value. Therefore, "it was impossible to ascertain what just compensation would be," and thus the government "was not obligated to pay compensation for [the] taking." *Id.* We rejected the government's argument. In so doing, we determined that:

the developer here, absent an express condition in the instrument of transfer sufficient to create an enforceable right against ·the County, retained no power to reclaim

the land should the County fail of its purpose. And absent such conditions on the County's estate in the land, the County took in fee simple ... and was free as a matter of property law to do with the property what it wished.

*Id.* at 527.

In short, the statement that the County "was free as a matter of property law to do with the property what it wished" and the statement that the County's interest in the 16.05 acres was "no different from the fee simples estates held by other owners of property within the William Center tract" only addressed the issue of the County's legal rights with respect to the 16.05 acres. They did not address the value of the 16.05 acres. Thus, the Court of Federal Claims erred as a matter of law in reading our decision as foreclosing an inquiry into whether the value of the 16.05 acres was different from the value of the surrounding land.

■ The point is that the property at issue here consists of strips of land, rather than one large, easily developable tract. The question the Court of Federal Claims must answer is, what is the fair market value of such odd pieces of land, taking into account their potential uses, current condition and the improvements thereon, and considering the most profitable uses to which the pieces of land can probably be put in the reasonably near future. The fair market value of the surrounding land is only one factor to be considered. The burden rests on the County to prove to the court's satisfaction what the fair market value of the 16.05 acres is.

The record on appeal does not permit us to determine the best and highest use of the 16.05 acres. Thus, we must remand for such a determination. On remand, the Court of Federal Claims will be in a position to make this determination, after receiving the views of the parties on whether further evidentiary proceedings are necessary.[1]

■■ Turning to the issue of the award of $100,000 for road improvements, we find that the Court of Federal Claims erred as a matter of law by appending the improvement fee to the perceived fair market value of the land. The fair market value of the land encompasses the extent to which the improvements increased the value of the land. The court's decision is contrary to the proposition that the task of the court in an eminent domain matter is to determine the fair market value of the land and not to compensate the condemnee for its investment. *See, e.g., Julius Goldman's Egg City v. United States,* 697 F.2d 1051, 1056 (Fed.Cir.1983) (rejecting the argument that the price paid by the condemnee is the equivalent of fair market value); *United States v. Toronto Nav. Co.,* 338 U.S. 396, 403, 70 S.Ct. 217, 221–22, 94 L.Ed. 195 (1949) ("Original cost is well termed the 'false standard of the past' where, as here, present market value in no way reflects that cost."); *Powelson,* 319 U.S. at 285, 63 S.Ct. at 1057 ("But the Fifth Amendment allows the owner only the fair market value of his property; it does not guarantee him a return of his investment.").

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is vacated. The case is remanded to the court for further proceedings consistent with this opinion.

## COSTS

Each party shall bear its own costs.

*VACATED AND REMANDED.*

---

1. As discussed above, on the first remand, the court decided the valuation issue based upon its reading of our decision and the record developed in the prior proceedings. We have found error in the court's reading of our decision. However, we express no view on whether the valuation issue may properly be decided based on the trial record, or whether further evidentiary proceedings are necessary. That is a matter for the Court of Federal Claims to decide after hearing from the County and the government.