Carol Judy **HIGASHI,** Plaintiff–
Appellant,

v.

**UNITED STATES,** Defendant–Appellee.

No. 99–5152.

United States Court of Appeals,
Federal Circuit.

Sept. 6, 2000.

Scott N. Yamaguchi, Nossaman, Guthner, Knox & Elliott, LLP, of Los Angeles, California; and Julia H. Mass, Rothner, Segall & Greenstone, of Pasadena, California, argued for plaintiff-appellant.

Geoffrey J.L. Brown, Trial Attorney, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director.

Before NEWMAN, PLAGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

Ms. Carol Judy Higashi sought a redress payment and an apology under 50 U.S.C. app. § 1989 (1994) (the Act) for her exclusion from her parents' original place of residence during World War II. The United States Court of Federal Claims denied the claim on summary judgment. *See Higashi v. United States*, 44 Fed.Cl. 238 (1999). Because at the time of her birth neither Ms. Higashi nor her family were under any legal restraint preventing

their return to their original place of residence, this court affirms.

## I.

Ms. Higashi was born in Boise, Idaho, on February 6, 1945. Three years earlier her parents, the Tsumuras, were relocated from their home in Sacramento, California, to the Tule Lake Relocation Center in northern California under Executive Order No. 9066, 3 C.F.R. 1092–93 (Feb. 19, 1942). This order allowed military commanders to designate areas "from which any or all persons may be excluded." Under the order Japanese and Americans of Japanese ancestry were removed from Western coastal regions to guarded camps, or "relocation centers." On June 1, 1943, Mr. Tsumura, plaintiff's father, received permission to move from Tule Lake to Boise, Idaho to work as an automobile mechanic. Mr. Tsumura notified the local office of the War Relocation Authority (WRA) of his arrival, as required. On July 5, 1943, Mr. Tsumura's family joined him in Boise.

On December 17, 1944, the United States rescinded the mass exclusion ordered under Executive Order 9066. *See* Public Proclamation No. 21, 10 Fed.Reg. 53 (1945). This rescission became completely effective on January 20, 1945. *See id.* Some individual exclusions continued under the new policy, but none were applicable to Mr. Tsumura or his family. *See id.* The national press media, including Japanese–American newspapers, distributed news of the lifting of the mass relocation order. In particular, The Idaho Daily Statesman, published in Boise, ran the story on December 18, 1944 on its front page, with the headline: "U.S. Revokes Order Excluding All Nisei from Pacific Coast." Mr. Tsumura could read and understand English in 1944 and 1945. *See Higashi,* 44 Fed.Cl. at 241. Mr. Tsumura did not receive any personal notice from the WRA that he was free to leave Boise. Mr. Tsumura and his wife later received compensation for their relocation under the Act.

Ms. Higashi was born after the date of rescission of the general exclusion orders. Plaintiff asserts that the Tsumura family

was unaware that the Government had eliminated the exclusion of persons of Japanese ancestry from California until almost a year later, in January 1946, when they learned from relatives that they could move back to California. *See Higashi,* 44 Fed.Cl. at 241. Plaintiff argues that, therefore, she suffered a deprivation of liberty which qualifies her for redress under the Act.

On October 20, 1992, the Office of Redress Administration (ORA) of the U.S. Department of Justice (DOJ), Civil Rights Division, denied plaintiff's claim for redress. ORA found, giving no detail, that plaintiff's losses were "not the result of Government action as defined by the Act." ORA reaffirmed its denial on October 7, 1993, noting that plaintiff was born after her parents were granted permanent leave from the internment camp in California, so that she had not been "'confined, held in custody, [or] relocated' within the meaning of the Act." After this court's decision in *Ishida v. United States,* 59 F.3d 1224 (Fed. Cir.1995), ORA reviewed plaintiff's claim again, and on June 16, 1997 again denied it, on the basis of her date of birth. The Appellate Section of the DOJ, Civil Rights Division, affirmed ORA's denial on March 19, 1998. In this last decision, ORA considered the specific situation of plaintiff's family, and stated that "determinations of eligibility cannot be made based on a claimant's subjective beliefs of whether he or she was or was not under the control of the WRA, or when a claimant had actual knowledge of the lifting of restrictions."

Plaintiff then appealed to the United States Court of Federal Claims. The trial court analyzed plaintiff's claim under the standards set forth by this court in *Ishida.* Specifically, the trial court determined that a claimant qualified for compensation only if legally restrained during the internment period. *See Higashi,* 44 Fed.Cl. at 245. Because Ms. Higashi was not born until after January 20, 1945, the Court of Federal Claims upheld ORA's determination that she had not been legally restrained.

The Court of Federal Claims also found that the publication of Proclamation 21 in the Federal Register, and the widespread media coverage of the event, provided Ms. Higashi's family with adequate notice of the lifting of all restrictions. *See id.* at 251. Therefore, the trial court granted summary judgment for the United States on July 7, 1999. Ms. Higashi appeals.

## II.

The Act provided for an apology on behalf of the United States to those United States citizens and permanent resident aliens of Japanese ancestry who were evacuated, relocated, and interned during World War II. *See* 50 U.S.C. app. § 1989(1), (2) (1994). The Act also provided a fund to compensate each eligible individual with payments of $20,000. *See id.* § 1989b-3, 4(a)(1). The Act defines an "eligible individual" as:

any individual of Japanese ancestry who is living on [August 10, 1988] and who, during the evacuation, relocation, and internment period—

(A) was a United States citizen or a permanent resident alien; and

(B) (i) was confined, held in custody, relocated, or otherwise deprived of liberty or property as a result of—

(I) Executive Order Numbered 9066, dated February 19, 1942;

(II) the Act entitled "An Act to provide a penalty for violation of restrictions or orders with respect to persons entering, remaining in, leaving, or committing any act in military areas or zones", approved March 21, 1942 (56 Stat. 173); or

(III) any other Executive order, Presidential proclamation, law of the United States, directive of the Armed Forces of the United States, or other action taken by or on behalf of the United States or its agents, representatives, officers, or employees, respecting the evacuation, relocation, or in-

ternment of individuals solely on the basis of Japanese ancestry; or

(ii) was enrolled on the records of the United States Government during the period beginning on December 7, 1941, and ending on June 30, 1946, as being in a prohibited military zone[.]

§ 1989b-7(2). The Act defines the term "evacuation, relocation, and internment period" as extending from December 7, 1941, to June 30, 1946. § 1989b-7(1).

Congress amended the Act in 1992. The 1992 amendments give the claimant the benefit of the doubt when evidence of eligibility is in equipoise. *See* 50 U.S.C. app. § 1989b-4(a)(3). The amendments also add spouses and parents of individuals of Japanese ancestry to the "eligible individual" category. *See* 50 U.S.C. app. § 1989b-7(2).

In 1989, the attorney general promulgated regulations to implement the Act's redress provisions and established the ORA to examine and verify the eligibility status of claimants. *See* 28 C.F.R. § 74 (1989). Effective May 27, 1997, following this court's decision in *Ishida*, ORA amended the regulations to clarify the eligibility status of persons born before January 20, 1945. The new regulations included as "eligible individuals" persons born after their family suffered relocation, extending eligibility to:

[i]ndividuals born on or before January 20, 1945, to a parent or parents who had been evacuated, relocated, or interned from his or her original place of residence in the prohibited military zones on the West Coast, on or after March 2, 1942, pursuant to paragraph (a)(4) of this section, and who were excluded by Executive Order 9066 or military proclamations issued under its authority, from their parent's or parents' original place of residence in the prohibited military zones on the West Coast.

28 C.F.R. § 74.3(b)(9) (1997); *see also Ishida,* 59 F.3d at 1229–30.

■■■■ This court defers to an agency's interpretation of a statute it administers when the statute leaves to the agency "the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress," *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), and the agency's interpretation is not arbitrary or capricious and does not contravene clearly discernible legislative intent, *see Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). When a statute does not clearly contain a decisional standard, e.g., as in this case for "confined, held in custody, relocated, or otherwise deprived of liberty or property," this court asks only whether an agency interpretation posits a "permissible" or "reasonable" construction of the statute. *See id.* at 843, 104 S.Ct. 2778; National Muffler Dealers Ass'n, Inc. v. United States. This court reviews factual findings for clear error. *See Board of County Supervisors of Prince William County, Va. v. United States,* 116 F.3d 454, 456 (Fed.Cir.1997).

■■■ Turning to the facts of this case, plaintiff was born in Idaho on February 6, 1945. The regulation governing eligibility under the Act, specifically 28 C.F.R. § 74.3 (1994), states that eligibility extends to persons born on or before January 20, 1945, *see* 28 C.F.R. § 74.3(b)(9), as well as others "determined to be eligible under the Act under a case-by case basis by the Redress Administrator," 28 C.F.R. § 74.3(c). Thus, if this regulation properly implements the Act, Ms. Higashi was born after the cut-off date and does not qualify as an "eligible individual" unless her eligibility can be established on specific grounds.

This court examines ORA's regulations under the standards of Chevron. Because the Act itself has not "directly spoken to the precise question" of whether a child born after January 20, 1945 qualifies for compensation, this court considers "wheth-er the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778. The Act states that an eligible individual is one who "during the evacuation, relocation, and internment period ... was ... deprived of liberty." 50 U.S.C. app. § 1989b–7(2). As earlier noted, the Act sets that relevant period from December 7, 1941, to June 30, 1946, *see* 50 U.S.C. app. § 1989b–7(1). This court considers whether the cut-off date of January 20, 1945 conflicts with the statutory period extending to June 30, 1946.

In *Ishida,* this court interpreted the Act to extend compensation to newborns "excluded by law from their parents 'original place of residence' as a result of Executive Order 9066." 59 F.3d at 1226. Because all restrictions on travel and relocation were rescinded as of January 20, 1945 by Proclamation No. 21, from that date forward newborns or other family members were no longer "excluded by law" from returning to their original residences. Thus, the holding of *Ishida* does not help plaintiff to obtain a redress payment.

The statutory period extends to June of 1946, and the statute requires a relocated individual to meet several requirements to show eligibility beyond living in the period between December 1941 and June 1946. The regulation includes "individuals otherwise deprived of liberty" after January 20, 1945 among those with entitlement to redress. *See* 28 C.F.R. § 74.3(b)(9). Thus, instead of impermissibly cutting short the eligibility period, the January 20 cut-off date determines that no compensable "deprivation of liberty" occurs for individuals born after the United States had lifted all restrictions. Thus, this court agrees with the trial court that 28 C.F.R. § 74.3(b)(9) is a "permissible and reasonable interpretation of the statute." *Higashi,* 44 Fed.Cl. at 245. Because Ms. Higashi was born after January 20, 1945, the trial court correctly granted summary judgment to the United States.

1348

The trial court also determined that the United States did not constructively deprive Ms. Higashi of liberty after January 20, 1945, by inducing her family to believe they could not return home. As evidence of continued restraint, plaintiff has presented forms signed by her father in 1943, in which he undertook to inform the Government of changes in his residence or employment. The requirement for these forms, according to Ms. Higashi, induced in her father the reasonable belief of continued confinement. However, these forms did not forbid changes in residence or employment, but merely were a commitment to notify the authorities if any such changes occurred. Mr. Tsumura actually signed these forms after he was allowed to leave the Tule Lake camp and move to Idaho. Plaintiff also bases her assertion of continued confinement on an incident that occurred some time between 1943 and 1945, as recounted by her father. In that incident, Mrs. Tsumura attempted to buy a kitchen knife in Boise. The shopkeeper apparently demurred and instead called the WRA. Because Mrs. Higashi eventually purchased the knife, after the WRA informed the shopkeeper that such a purchase was allowed, this incident is not evidence of a policy of constraint.

The trial court below found no constructive or actual restraint past the January 20 deadline, moreover, because public notice was adequate to inform that the restraints were lifted. The Court of Federal Claims noted the publicity given Proclamation No. 21, and Mr. Tsumura's ability to read about it in English. That court also found the return of some 47,000 persons of Japanese ancestry to formerly prohibited zones in California, Washington, and Oregon in 1945 as indicative of widespread knowledge that return restrictions had been discontinued. *See Higashi*, 44 Fed.Cl. at 251. Plaintiff argues, however, that notice by publication alone was insufficient to relieve the Tsumura family of its belief that return to California was still barred, because there is no evidence that any member of the family read the publications, and because constructive notice by publication is ineffective.

The Supreme Court has not endorsed any particular formula for achieving a balance between "the vital interest of the State in bringing any issues as to its fiduciaries to a final settlement ... [and] the individual interest sought to be protected by the Fourteenth Amendment." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In *Mullane*, the Court expressly did not commit itself to any formula triggering constructive notice or mandating a particular form of notice. *See id.* As a general rule, however, the Court has required notice reasonably calculated, under all the circumstances, to apprise interested parties and to be of "such nature as reasonably to convey the required information." *Id.* In short, notice must pass a reasonableness test.

*Mullane* gives a measure of what does not pass the reasonableness test. In *Mullane*, the question was sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund in New York state. *See id.* at 309, 70 S.Ct. 652. There, notice was given by publication in a single local newspaper, once each week for four weeks. The case featured only 113 beneficiaries, some of whom did not live within the state. The Supreme Court therefore noted:

[C]hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

*Id.* at 315, 70 S.Ct. 652. Because the trustee had the addresses of the beneficiaries in hand, the Court concluded: "[U]nder [these] circumstances [the small print newspaper notice] is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at

319, 70 S.Ct. 652. The Court deemed this small print newspaper notice inadequate.

In the instant case, however, the WRA had to notify 115,000, not 113, individuals during war time. Unlike the small local newspaper advertisement in *Mullane*, in this case the media dissemination of the news of the Proclamation was appropriately widespread, and reasonably likely to reach the many individuals who should have been informed. In particular, the article with the two-column headline, "U.S. Revokes Order Excluding All Nisei From Pacific Coast," which appeared at the top of the front page of The Idaho Daily Statesman on December 18, 1944, reasonably should have informed Mr. Tsumura, or other Japanese residents in the community with whom he communicated, of the Proclamation.

■ Finally, and unlike the notice to beneficiaries in *Mullane*, Proclamation 21 was published in the Federal Register. The publication of rules and regulations in the Federal Register gives legal notice of their contents to those subject to, or affected by, them, "regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Therefore, this court finds the notice of Proclamation 21 to have been adequate.*

In sum, the Act sets forth several requirements an individual must meet to be "eligible." Most important, an individual must show a deprivation of liberty. According to reasonable ORA regulations, persons born on or after January 20, 1945, were not excluded from and could legally return to their parents' original residence on the West Coast. *See* 62 Fed.Reg. 19,-929–19,930. Thus, plaintiff could not have been deprived of liberty after January 20, 1945. Because plaintiff suffered no deprivation of liberty, or other hardship leading to eligibility for redress under 50 U.S.C.

app. § 1989b–7, this court affirms the decision of the Court of Federal Claims.

### COSTS

Each party shall bear its own costs.

*AFFIRMED.*

---

* Compare *Song v. United States,* 43 Fed.Cl. 621 (1999), finding on the facts of that case that notice was inadequate.