**Robert K. MURAKAMI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–55C.

United States Court of Federal Claims.

Oct. 31, 2003.

John Howard Ota, Alameda, California, for plaintiff.

Steven J. Abelson, U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

## OPINION

ALLEGRA, Judge.

After an ordered remand, this case is again before the court on cross-motions on the administrative record. Plaintiff seeks review of the Attorney General's denial of his claim for redress under the Civil Liberties Act of 1988 (the Act), 50 U.S.C. app. § 1989, *et seq.* (1988 & Supp. V 1993). The Act establishes a comprehensive program for paying restitution to individuals of Japanese ancestry who were interned, relocated or otherwise deprived of their liberties. *See* 50 U.S.C. app. § 1989b–4(a) & (b).

Having carefully reviewed the briefs filed herein, the court determines that oral argument on the cross-motions is unnecessary. For the reasons discussed below, defendant's cross-motion on the administrative record is **GRANTED** and plaintiff's motion on the administrative record is **DENIED**.

## I. Background

This court has already rendered three opinions in this case, and a detailed factual

background and procedural history for this matter is supplied therein. *See Murakami v. United States*, 52 Fed.Cl. 232 (2002) (*Murakami III*); *Murakami v. United States*, 46 Fed.Cl. 731 (2000) (*Murakami II*); *Murakami v. United States*, 46 Fed.Cl. 653 (2000) (*Murakami I*). The court will not retrace its steps, but instead only briefly will highlight the additional facts essential to the ruling on the instant motions.

In *Murakami III*, this court held, *inter alia*, that the Office of Redress Administration ("ORA") had failed adequately to consider whether plaintiff suffered a deprivation of liberty as a result of the government's failure to lift the individual exclusion order on his father until one month before his birth, thereby effectively preventing him from being born at his family's traditional home of Los Angeles, California. The court held that in examining this claim, the ORA erroneously had limited its analysis to the so-called *Ishida* provision of the regulations interpreting the Act, 28 C.F.R. § 74.3(b)(9), which affirmatively provides that individuals born on or before January 20, 1945, to interned parents are eligible for compensation. *See Ishida v. United States*, 59 F.3d 1224 (Fed.Cir.1995). The court found that the ORA had not examined adequately plaintiff's claim under 28 C.F.R. § 74.3(c), to determine whether plaintiff was "deprived of liberty or property as a result of" government action "respecting the evacuation, relocation, or internment of individuals solely on the basis of Japanese ancestry." 28 C.F.R. § 74.3(a)(4)(iii) (2003); *see Murakami III*, 52 Fed.Cl. at 240.[1]

In interpreting the latter provision, the court expressed deep-seated doubts as to whether, consistent with the statutory mandate, the agency could validly maintain that there was no deprivation of liberty "as a result of" the government's action here simply because the legal restraint on plaintiff's parents' ability to return to Los Angeles had been removed before plaintiff was born. On

this count, the court noted that "the plain language of the statute connotes that if the deprivation of liberty was caused by some prior action of the United States, redress might be obtainable even though the prior legal restraint was removed prior to the time the deprivation was actually suffered." *Murakami v. United States*, 52 Fed.Cl. at 240. The court declared that, as part of the ORA proceeding on remand, plaintiff should be given the opportunity to demonstrate that his mother was unable to travel to the Los Angeles area at the time the individual exclusion order on plaintiff's father was rescinded. *Id.* at 242.

On remand, plaintiff was given that opportunity and presented approximately five pages of evidence to the ORA: declarations by plaintiff's mother and father, as well as a declaration by Dr. Shigekawa, the physician who treated plaintiff's mother at the time of her pregnancy. In response, defendant provided evidence that Mrs. Murakami could have traveled safely from Chicago to Los Angeles despite her advanced stage of pregnancy, including meteorological data reflecting average temperatures in the country during the summer of 1945, as well as information about the frequency and quality of rail service operating between Chicago and Los Angeles in 1945. On October 2, 2002, the ORA submitted its decision on remand and again found plaintiff ineligible for redress under the Act.

In response to the ORA's new findings, plaintiff, on January 24, 2003, moved for judgment on the administrative record, arguing that the ORA, on remand, had failed to perform the analysis described in this court's order in *Murakami III*. In particular, he alleged that the ORA had disregarded plaintiff's evidence establishing that travel was made "practically impossible" or "unreasonably dangerous" as a result of the government's actions. For its part, defendant filed

---

1. As this court has noted previously, neither the Act nor its implementing regulations precisely define what constitutes a compensable deprivation of liberty, other than actual evacuation, relocation, or internment. Rather, the regulations promulgated by the ORA approach this issue by establishing categories of individuals who are deemed to have been "deprived of liberty." 28

C.F.R. § 74.3(a)(4), (b). The regulation also has a catch all provision which provides that the previously-identified categories do "not [constitute] an exhaustive list of individuals who are deemed eligible for compensation; there may be other individuals determined to be eligible under the Act on a case-by-case basis by the Redress Administrator." *Id.* § 74.3(c).

a cross-motion for judgment on the administrative record. Plaintiff attached to his reply two supplemental statements: a joint declaration by plaintiff's parents, and a second declaration by his mother's physician. On May 16, 2003, defendant moved to strike these additional submissions as untimely and inappropriately filed at this juncture in the litigation.

## II. Discussion

By the terms of the Act, judicial review of a denial of compensation under the Act is available only in this court. 50 U.S.C. app. § 1989b–4(h)(1) (2000). And that review is highly circumscribed—this court "shall review the denial upon the administrative record and shall hold unlawful and set aside the denial if it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*

In the case *sub judice,* plaintiff renews his argument that the ORA improperly denied his claim by failing to conclude that he had been "otherwise deprived of liberty" as a result of the orders which he claims proximately caused him to be born in Chicago rather than his parents' home town of Los Angeles. In this regard, plaintiff vigorously asseverates that be suffered a deprivation of liberty because his father's individual exclusion order was rescinded only thirty-three days prior to his birth, too late to allow plaintiff's parents to return safely to California. He reasserts that his mother, a few days shy of eight months pregnant and thus, at best, a few weeks from delivery, could not have safely traveled by train, during the high summer, from Chicago to the Los Angeles area for his birth.

In its prior decision, the ORA rejected this claim, not because it discounted plaintiff's assertions regarding his mother's advanced stage of pregnancy, but simply because plaintiff had been born after July 21, 1945, the date his father's individual exclusion order was rescinded, and thus did not qualify under the *Ishida* exception in the regulations. Illustrating the limited nature of this prior review, this court, in *Murakami III,* noted that, at oral argument, defendant counsel had "indicated that compensation would not be owed here even if Mrs. Murakami had been suffering the pangs of labor on July 21, 1945, and given birth to her son mere hours after the exclusion order against her husband had been lifted." *Murakami III,* 52 Fed.Cl. at 237. In rejecting this wooden construction of the regulations, this court indicated that "[i]n considering plaintiff's claim here, the ORA thus appears to have employed a faulty, overly narrow reading of *Ishida,* which, in turn, led it legally astray in analyzing Mr. Murakami's claim." *Id.* at 238. It held that the ORA had failed to consider whether plaintiff had otherwise been deprived of liberty, based upon its apparent view "that a deprivation of liberty must result from a then-existing legal restraint, rather than from the practical hindrances flowing from a prior legal restraint." *Id.* The court held that such an "inflexible approach" conflicts with "that portion of the statute which provides that an individual is eligible [for] redress if otherwise deprived of liberty or property 'as a result of' the listed government laws or orders." *Id.*

On remand, the ORA, like Old Dobbins, appeared to don blinders to much of what this court previously held. Passages of the remand decision, indeed, appear to be drawn *haec verba* from the briefs filed by the government earlier in this case and persist in legal positions that this court has already rejected. For example, the decision restates assertions regarding *Ishida v. United States,* 59 F.3d 1224 (Fed.Cir.1995) and *Higashi v. United States,* 225 F.3d 1343 (Fed.Cir.2000), that this court has found untenable. *See Murakami III,* 52 Fed.Cl. at 238, 241. Moreover, the agency's remand decision confirms that the ORA believes, as this court suspected in *Murakami III,* that a deprivation of liberty must "result from a then-existing legal restraint, rather than from the practical hindrances flowing from a prior legal restraint." *Id.* at 238. In *Murakami III,* the court demonstrated that such a view of the statute is inconsistent with the language of the Act, which provides that an individual qualifies for redress if he or she was deprived of liberty "as a result of" a legal restraint. *Id.* at 238–41. For that reason and others previously expressed, the court now categorically rejects any notion

that a deprivation of liberty must stem from a then-existing legal restraint.

Thus, it is fair to say that many of the complaints voiced by plaintiff regarding the ORA's remand decision are *bona fide.* But, that does not end this matter in plaintiff's favor. *Per contra.* In a critical passage of its decision, the ORA went on to apply the legal standard that this court believes is dictated by the Act, focusing on whether the removal of the legal restraint on plaintiff's father occurred too late to allow the family to return safely to the Los Angeles area for plaintiff's birth.[2] In this regard, the ORA decision states that:

> In recognition of its continuing obligation to consider Mr. Murakami's claim on a case-by-case basis, ORA conducted additional research in response to some of Mrs. Murakami's reasons for failing to return to California. She indicated that the "four days" of travel during the "hottest time of the year" were factors involved in her decision not to return to California. Research reflects, however, that in the summer of 1945, the temperatures were much cooler than normal for the mid-west and the west. Historical information from the National Oceanic and Atmospheric Administration indicates that the temperatures for Illinois and nearly all of the western states were below normal over the summer, with the temperatures ranging from the 50's to the low's 70s.

> Research also revealed that the Atchison, Topeka and Santa Fe ("Santa Fe") railroad was the only railroad company with trains between Chicago and Los Angeles. By July and August 1945, the Santa Fe provided air-conditioned train travel between the two cities. Moreover the Santa Fe's "Super Chief," was the nation's first diesel-powered, all Pullman streamliner, and had a running time of 39 and one-half hours from Chicago to Los Angeles.

Relying on this information, the ORA discounted the declaration filed by Dr. Shigekawa, Mrs. Murakami's physician back in 1945, in which she, in summary fashion, indicated that she would not have advised Mrs. Murakami to travel in her advanced stage of pregnancy. In this regard, the agency found: "The doctor may have also assumed that lengthy train travel in the summer would have been stressful, but as noted above, by the late 1930's, there were air-conditioned trains taking less than two days to travel between Chicago and Los Angeles."

Now, to be sure, in its remand decision, the ORA relied on other facts that this court believes are extraneous—for example, that the government was not responsible for Mrs. Murakami's becoming pregnant. When all is said and done, however, this court may not overturn the ORA's decision unless, as a whole, it is arbitrary, capricious, an abuse of discretion or otherwise contrary to law. Regarding this standard, which is drawn from the Administrative Procedures Act, the Supreme Court has stated:

> Section 706(2)(A) requires a finding that the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (citations omitted); *see also Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057–58 (Fed.Cir. 2000); *Overstreet Elec. Co. v. United States,* 47 Fed.Cl. 728, 731 (2000). By its very definition, this standard recognizes the possibili-

---

**2.** As a prelude to this portion of its decision, the ORA seemingly contradicted its view that deprivations of liberty must result from a continuing legal restraint, admitting that "if Mrs. Murakami had been placed in an internment camp, contracted a contagious disease, such as tuberculosis, and had to remain in isolation, such as in a hospital or other institution, so that she was unable to travel after the restrictions were lifted, this scenario would result in compensation." In so holding, the ORA appeared to admit that the government would be responsible for consequences that proximately flowed from a prior legal restraint.

ty that there exists a zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983); *see also Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

In the court's view, the agency here eventually applied, albeit in the alternative, a correct statement of the law. Based on the administrative record, the court cannot say that the decision the ORA rendered based upon that formulation of the law is irrational, particularly given the scant evidence provided by plaintiff on remand.[3] In other words, the agency's determination that Mrs. Murakami could have traveled to Los Angeles once the individual restriction order on her husband was lifted appears within the bounds of reasoned decisionmaking. That the court might have reached a different decision is irrelevant as the court may not substitute its judgment for that of the agency. *See Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. 814.[4]

### III. Conclusion

On the limited record before it, the court is compelled to find that the ORA's most recent determination is not arbitrary, capricious, an abuse of discretion or otherwise contrary to law. Accordingly, the court GRANTS defen-

dant's cross-motion for judgment on the administrative record and DENIES plaintiff's motion. The Clerk shall dismiss plaintiff's complaint. No costs.

**IT IS SO ORDERED.**

---

3. The court notes that the one-page declaration of Doctor Shigekawa is conclusory and indicates that she would have advised Mrs. Murakami not to travel based not only on the fact that the trip would have been "too stressful," but also because of her understanding that "Mrs. Murakami would have had a difficult time finding a physician to care for her [in California] because of the strong hostility to Japanese Americans that existed then." In the court's view, the ORA properly determined that the latter assertion was irrelevant. In its reply brief, plaintiff sought to supplement the record with a supplemental declaration by Dr. Shigekawa indicating she would have advised against travel even with the availability of an air conditioned train and if the situation in California had not been hostile towards Japanese Americans. In the court's view, this is too little and too late. Defendant has moved to strike this

supplemental declaration and because the court does not believe that plaintiff has shown any basis for supplementing the record at this late stage, it grants that motion. *See Murakami II,* 46 Fed.Cl. at 733–40. But, the decision here would be the same even if this second declaration were considered part of the administrative record.

4. Plaintiff further argues that, even if it was medically advisable, it was impossible for the Murakami family to wrap up their affairs, set up a new household and obtain employment between the time the individual restriction order on Mr. Murakami's father was lifted and Mrs. Murakami gave birth. In the court's view, these allegations carry too far the concept of causation associated with the "as a result of" language of the Act.